UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-01066-RGK-DSR | | Date | April 2, 2026 |
|---|---|---|---|---|
| Title | *K.A.O.T. v. Kristi Noem et al.* | | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) Order Re: Petitioner's Second *Ex Parte* Application for Temporary Restraining Order [18]

## I.     INTRODUCTION

On March 6, 2026, K.A.O.T. ("Petitioner") filed a Petition for Writ of Habeas Corpus and an *Ex Parte* Motion for a Temporary Restraining Order ("TRO") against Kristi Noem, Pamela Bondi, Todd Lyons, Immigration and Customs Enforcement ("ICE"), Jaime Rios, and Fereti Semaia (collectively, "Respondents"). (ECF Nos. 1, 5.) Petitioner, a noncitizen, is currently being held in ICE custody.

On March 9, 2026, the Court denied Petitioner's initial *Ex Parte* Motion, finding that Petitioner did not meet the standard to justify *ex parte* relief. (ECF No. 7.) On March 12, 2026, Petitioner filed a Renewed *Ex Parte* Motion for a TRO. (ECF No. 14.) On March 13, 2026, the Court denied Petitioner's renewed motion, finding again that Petitioner failed to meet the *ex parte* standard. (ECF No. 15.)

On March 27, 2026, Petitioner filed a Second *Ex Parte* Application for a TRO. (ECF No. 18.) Petitioner seeks the Court's order that Petitioner be immediately released from custody and to enjoin Respondents from re-detaining Petitioner in the future without a pre-deprivation hearing before a neutral arbiter, enjoin Respondents from placing further supervision requirements upon release, and require Respondents to return to Petitioner all property confiscated from him during his arrest. For the following reasons, the Court **DENIES** the Second Application.

## II.     FACTUAL BACKGROUND

Petitioner is a citizen of Nicaragua. (Riley Decl. ¶ 4, ECF No. 19-1.) On or about October 1, 2022, Petitioner came to the United States without a valid immigration visa. (*Id.* ¶ 5.) He was neither admitted nor paroled. (*Id.*) On October 4, 2022, Petitioner was released in the United States as an alternative to detention. (*Id.*) On December 19, 2025, Petitioner filed an application for adjustment of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-01066-RGK-DSR | | Date | April 2, 2026 |
|---|---|---|---|---|
| Title | ***K.A.O.T. v. Kristi Noem et al.*** | | | |

status based on his 2024 marriage to a United States citizen. (*Id.* ¶ 7; K.A.O.T. Writ Decl. ¶ 6., ECF No 1-1.)[1]

On December 29, 2025, ICE detained Petitioner during a routine check-in appointment. (*Id.* ¶¶ 8–9.) Petitioner was neither provided notice nor a pre-deprivation hearing before his detention. (*Id.*) Subsequently, Petitioner was then served a Notice to Appear, placing him in removal proceedings. (*Id.* ¶ 11.) Petitioner was then transferred to the Desert View Annex detention facility, where he remains detained today. (*Id.* ¶ 12.)

On March 25, 2026, while in detention, Petitioner witnessed one of his cellmates collapse and die. (K.A.O.T. TRO Decl. ¶ 2, ECF No. 18-2.) Petitioner then collapsed, lost consciousness, and was taken to a hospital. (*Id.* ¶ 3.) Since then, Petitioner has had a severe headache, his body is very sore, and he does not feel that he is receiving proper medical care while detained. (*Id.* ¶¶ 4, 17.) A psychologist Petitioner saw said Petitioner likely has post-traumatic stress disorder ("PTSD") from witnessing the death of his cellmate. (*Id.* ¶ 13.) Additionally, in one instance, Petitioner was denied water or another beverage with dinner and was sent to solitary confinement along with others who requested water. (*Id.* ¶ 15.)

### III.    JUDICIAL STANDARD

#### A.    *Ex Parte* Relief

To justify *ex parte* relief, the movant must show: (1) "why the . . . ultimate relief requested cannot be calendared in the usual manner[;]" and (2) that he is "without fault in creating the crisis that requires *ex parte* relief." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

#### B.    Temporary Restraining Order

While a preliminary injunction is intended to preserve the status quo pending a judgment on the merits, a TRO is intended to preserve the status quo only until a preliminary injunction hearing can be held. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

Despite this difference, the standard for a TRO is "substantially identical" to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a TRO, the moving party must show: (1) a likelihood of success on the

---

[1] The application for adjustment of status was closed due to Petitioner's recent detention. (K.A.O.T. Writ Decl. ¶ 13.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-01066-RGK-DSR | Date | April 2, 2026 |
|---|---|---|---|
| Title | ***K.A.O.T. v. Kristi Noem et al.*** | | |

merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (the "*Winter* test"). In the Ninth Circuit, courts also apply a sliding scale test, in which the elements of the *Winter* test are balanced "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The moving party bears the burden of persuasion. *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997).

## IV.      DISCUSSION

### A.      *Ex Parte* **Relief**

Here, Petitioner has met the *ex parte* standard. Petitioner alleges that he needs medical attention now, following his collapse from witnessing his cellmate die. He alleges that he likely has PTSD and physical maladies from the event that require attention that the detention center cannot provide. In addition, he also alleges that the guards in the detention center denied him water and sent him to solitary confinement with those who requested water. Given these conditions, the Court finds that the relief Petitioner requests cannot be calendared in the usual manner without severe repercussions.

In addition, Petitioner is without fault for creating the crisis that requires *ex parte* relief. Petitioner's wife has been searching for legal counsel for him since his initial detention in December 2025, which she obtained for him on February 26, 2026. The initial habeas petition and *ex parte* request for TRO was filed soon after, on March 6, 2026. In addition, the present TRO was filed only two days after Petitioner collapsed and denied water. Petitioner also does not seem to be at fault for creating the alleged unlawful detention. Accordingly, the Court finds Petitioner without fault.

### B.      **TRO**

Petitioner claims that his current detention violates the Due Process Clause of the Fifth Amendment of the United States Constitution because Petitioner was deprived of a pre-deprivation hearing by a neutral arbiter before his re-detention. Respondents argue that Petitioner has failed to exhaust his administrative remedies because he has not yet submitted a request for a bond hearing and that Petitioner has not shown a likelihood of success on the merits. The Court first begins with assessing the administrative exhaustion issue and then proceeds to the analysis of whether Petitioner has demonstrated a likelihood of success on the merits of his claims.

#### 1.      *Administrative Exhaustion*

In the absence of a statute mandating administrative exhaustion, courts can require administrative exhaustion within their judicial discretion, referred to as prudential exhaustion. *See Puga*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-01066-RGK-DSR | Date | April 2, 2026 |
|---|---|---|---|
| Title | ***K.A.O.T. v. Kristi Noem et al.*** | | |

*v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Prudential exhaustion may be required if "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (internal quotations omitted).

In this case, Petitioner raises a purely legal question: whether Respondents have violated procedural due process by failing to give Petitioner a pre-deprivation hearing. As an immigration judge cannot determine this legal question in a bond hearing, agency expertise plays no role and makes agency consideration unnecessary. Similarly, there is little concern here that the relaxation of the administrative exhaustion requirement may encourage deliberate bypass of the administrative scheme. Additionally, administrative review will not allow an agency to correct its own mistakes because the legal question must be independently resolved by this Court, as opposed to the agency. As such, the Court declines to require administrative exhaustion in this case. *See Barrios Osorio v. Bondi*, 2026 WL 607765, at *3 (W.D. Wash. Mar. 4, 2026) ("Because the question presented is purely legal and does not require further administrative development, the Court waives the prudential exhaustion requirement.").

> 2.    *Likelihood of Success on the Merits: Procedural Due Process Violation.*

Next, Petitioner argues that he is likely to succeed on the merits of his claim because Respondents failed to give Petitioner a pre-deprivation hearing before re-detention, which Petitioner argues is required by the Due Process Clause of the Fifth Amendment. The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

In determining whether procedures used were constitutionally sufficient, a Court weighs three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976). Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

> a.    *Private Interest*

Petitioner has a personal interest in remaining at liberty, free from detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (noting interest in being free from governmental physical detention "is the most elemental of liberty interests"). The Supreme Court has held that individuals who have been

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 5:26-cv-01066-RGK-DSR | | Date | April 2, 2026 |
|----------|----------------------|--|------|---------------|
| Title | ***K.A.O.T. v. Kristi Noem et al.*** | | | |

released from government custody, even when conditional, have an interest in their continued liberty. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (holding prison paroles have an unqualified liberty interest in their release from prison); *Young v. Harper*, 520 U.S. 143, 147–48 (1997) (same). Petitioner in this case has built a life in the United States, including by marrying a United States citizen and engaging in community events. He therefore has developed attachments that necessitate a substantial interest in remaining at liberty, despite the fact that ICE retained the ability to re-detain him.

        b.       *Risk of Erroneous Deprivation*

Petitioner contends that there is a high risk of erroneous deprivation absent a pre-deprivation hearing in front of a neutral arbitrator. Petitioner argues that a pre-deprivation hearing, a hearing held prior to re-detention, is necessary to determine whether there was a change of circumstances since Petitioner's initial release, thus protecting his liberty interest. Although the statute says that the Attorney General "at any time revoke a bond or parole," 8 U.S.C. § 1226, it is the Government's practice to only re-arrest a noncitizen when there is a change in circumstances. *See Y.M.M. v. Wamsley*, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). More specifically, the Government has a practice of only re-arresting a noncitizen when there is a material change in circumstances as to whether the noncitizen poses a danger to the community or is a flight risk. *Id.*

However, it is unclear why Petitioner requires a pre-deprivation hearing to protect his liberty interest. The "Supreme Court has emphasized that due process is flexible and has rejected the proposition that due process always requires a pre-deprivation hearing." *Kilroy v. Los Angeles Unified Sch. Dist.*, 2018 WL 7916367, at *10 (C.D. Cal. Dec. 6, 2018), *report and recommendation adopted sub nom. Kilroy v. Los Angeles Unified Sch. Dist. Bd. of Educ.*, 2019 WL 1429615 (C.D. Cal. Mar. 29, 2019), *aff'd*, 810 F. App'x 558 (9th Cir. 2020) (citing *Gilbert v. Homar*, 520 U.S. 924, 930 (1997)).

As Respondents assert in this case, Petitioner is now re-detained in ICE custody and can request a bond hearing. In the bond hearing, the immigration judge will determine whether Petitioner now poses a danger to the community or is a flight risk, and if he does not, will release him. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022). Although bond hearings are held following detention in which the noncitizens have the burden of proof to show that they are not dangers to the community nor flight risks, the Court finds that the bond hearing will sufficiently protect Petitioner's liberty interest in remaining in the community. Adding a pre-deprivation hearing will only work to add unnecessary and redundant procedures to the already-established process under 8 U.S.C. § 1226 which entitles Petitioner to a bond hearing.

---

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:26-cv-01066-RGK-DSR | | Date | April 2, 2026 |
|---|---|---|---|---|
| Title | *K.A.O.T. v. Kristi Noem et al.* | | | |

c. *Government's Interest*

Petitioner argues that the Government's interest is low because there was no immediately apparent reason to re-detain Petitioner and there would be a minimal administrative cost to provide him with a pre-deprivation hearing. However, the Government "clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (citing *Demore v. Kim*, 538 U.S. 510, 518 (2003)). In addition, requiring a pre-deprivation hearing is unnecessary in light of the post-deprivation hearing that Petitioner will receive. A pre-deprivation hearing will only add unnecessary fiscal and administrative burden when Petitioner's liberty interest can adequately be protected by a post-deprivation hearing that Petitioner can request. Therefore, the Government's interest is substantial in preventing inefficient and redundant procedures.

On balance, although Petitioner has an interest in remaining at liberty, the low risk of erroneous deprivation because of the already established bond process and the strong Government interest in reducing unnecessary hearings outweighs Petitioner's interest. Therefore, the Court finds that Respondents' failure to give Petitioner a pre-deprivation hearing before re-detention does not violate procedural due process. Because of this, Petitioner is unlikely to succeed on the merits of his Petition.

In sum, Petitioner has not shown a likelihood of success on the merits of his claims. He therefore has not demonstrated entitlement to the TRO relief he seeks. *See California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (cleaned up) ("Likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry, [the court] need not consider the other factors.").

## V.   CONCLUSION

For the foregoing reasons, Petitioner's Second *Ex Parte* Application for a TRO is **DENIED**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer              JRE/sh